## GILBERT *v.* CLAY SALES, INC.

[No. 265, September Term, 1969.]

*Decided February 5, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*David L. Woody* for appellant.

*Daniel B. Wiegers,* with whom was *Alfred W. Spates* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The appellant (Mrs. Gilbert), a member of the bar of the District of Columbia, has been, and perhaps still is, an occasional investor in real estate. The venture which generated this appeal, while not a complete disaster, is hardly likely to be a happy memory. There is little, if any, dispute in respect of the relevant facts.

In the summer of 1965 Mrs. Gilbert, at the time a 55 year old resident of Montgomery County, became interested in a property in Mount Airy, a small town in Carroll County about 25 miles north of her home in Bethesda. It was a large frame house on Main Street owned by the appellee, Clay Sales, Inc., a Maryland corporation; it had been converted into three apartments. The appellee's broker, Nick Aloi, showed it to Mrs. Gilbert and Mrs. Joyce Alibrando, her own broker, for the first time in August. They were denied access to the apartment on the first floor by the tenant, the estranged wife of Paul Clay, president and sole stockholder of the appellee. Mrs. Clay was said to be "unusual * * * [and] peculiar." Subsequent visits by Mrs. Gilbert and Mrs. Alibrando were equally unsuccessful as far as admission to Mrs. Clay's apartment was concerned. However, Aloi assured them that Mrs. Clay would be out of the property before settlement.

The contract of sale, executed 8 August, provided for a purchase price of $11,000, of which $8,250 was to be paid in cash at settlement, the balance to be evidenced by a note for $2,750. Settlement and the delivery of possession were scheduled for 7 September but this could

not be accomplished because the appellee's charter, having been forfeited, had to be revived and also because Mrs. Clay was still in possession of the first floor apartment. Settlement was rescheduled for 22 September. Mrs. Gilbert, Mrs. Alibrando, Paul Clay and Aloi were among those present. Mrs. Clay was still in possession and Clay was unable to say with certainty just when she would vacate the premises. After some discussion Mrs. Gilbert agreed to complete the transaction upon Clay's representation that until his wife moved out he would pay Mrs. Gilbert $90 per month. It seems to have been understood that she would quit the premises in a matter of weeks.

Clay paid rent to Mrs. Gilbert on 10 November and again on 10 December but it is not clear that he has paid all that was due. On 14 December Mrs. Gilbert and Aloi visited the property but again they were unable to gain entrance to the first floor apartment. Mrs. Gilbert said it was "occupied at that time." She next visited the property on 11 February, apparently responding to a telephone call from "the oil company." She found the house vacant; the "plaster was down;" burst pipes were visible; "every radiator in the house was burst;" "puddles were on the floors;" the furnace emergency switch was in the "off" position. Just when Mrs. Clay moved out of the first floor apartment was never established but it seems to be conceded that Mrs. Clay did not give notice either of her departure or of her intention to depart.

Mrs. Gilbert said she tried to get repair estimates from different people but the only way "they would consider the work * * * [was] on a time and material basis, with no guarantee of any maximum [price] * * *." She tried to sell the property but it was "not until October of [19]68" that she was able to dispose of it. The sale price, $9,600, seems to have been the best offer she was able to obtain.

When the $2,750 note matured on 22 September 1966 she refused payment. On 23 February 1967 the appellee obtained judgment by confession. After much skirmishing the judgment was stricken, whereupon Mrs. Gilbert

filed a counterclaim against the appellee for $6,256.85. The case (both note and counterclaim) came on for trial before Joseph M. Mathias, J., and a jury, on 1 July 1969. Judge Mathias directed a verdict in favor of the appellee against Mrs. Gilbert for the amount of the note, interest, costs and attorney's fees and, in the counterclaim, he directed a verdict in favor of the appellee. From the ensuing judgments Mrs. Gilbert has appealed.

## I.

We shall dispose first of the appeal from appellee's judgment on the note. Judge Mathias did "not find any legally sufficient evidence * * * to bar * * * recovery on the note," nor do we. Mrs. Gilbert argues that the jury could reasonably have found that she was justified in refusing to pay the note because part of the consideration was the appellee's "obligation to surrender the premises at the end of its tenancy in good condition." This lacks both substance and merit, as we shall see.

## II.

Mrs. Gilbert next argues that "reasonable men could differ as to whether Paul Clay was acting individually or on behalf of" the appellee when he agreed to pay the rent during Mrs. Clay's occupancy; that "reasonable minds could infer that Paul Clay had the actual authority to bind the * * * [appellee] as tenant;" that the appellee "was estopped to deny that it became the tenant at settlement;" and that there was evidence from which a jury could reasonably have inferred that the appellee was responsible for the damages to the property. The argument, though finely spun and ably presented, fails of persuasion simply because it is suspended in a vacuum. There is no evidence that the appellee ever agreed to be Mrs. Gilbert's tenant. Up to the moment of transfer of title Mrs. Clay obviously was the tenant of the appellee although on what terms, whether from month to month, week to week, at will or by sufferance, we cannot say since the record provides no clue. But there is no sup-

port for the notion that, at the moment of transfer, the appellee became the tenant and that Mrs. Clay somehow became its sub-tenant. Indeed, the record makes it conspicuously clear that Mrs. Gilbert accepted Mrs. Clay as her tenant and that the only commitment made by Paul Clay was that he, or the appellee, would see to the payment of the rent. While Mrs. Gilbert was on the witness stand being examined by her own attorney the following colloquy took place:

> "THE COURT: Mrs. Gilbert, when she went to settlement knew that Mrs. Clay was in that basement apartment. As a matter of fact, she even entered into an agreement for Mr. Clay or for the corporation to pay $90.00 a month rent for Mrs. Clay. *In other words, she accepted her as a tenant, didn't she?* [Emphasis added.]
>
> "MR. WOODY [Counsel for Mrs. Gilbert]: *Yes.* [Emphasis added.]
> * * *
> "Q. Getting back to the settlement, Mrs. Gilbert. At settlement was it your desire that Mrs. Clay stay on as a tenant of that property?
>
> "A. No, it was not. I wanted her out as soon as possible.
>
> "Q. What could you do about it at the time you went to settlement?
>
> "A. I had already put up my money over a month previously, I could have simply refused to take the property but I believed that he would have her out shortly *and I permitted her,* based on his assurances, *to stay for a very limited period.* * * *.
>
> "He guaranteed to get her out within a matter of days.
>
> "Q. And did this meet with your approval?
>
> "A. As long as it was a matter of days *I went along with it.*" (Emphasis added.)

Why Mrs. Gilbert did not join the Clays as parties de-

fendant in her counterclaim is something of an enigma. *See* Maryland Rules 313 c 1 and 313 f. And why the impracticality of proceeding against a corporation of doubtful solvency did not occur to her is also puzzling. It may be that she conceived the counterclaim as nothing more than a defense against appellee's attempt to collect the note but this too is a misapprehension. Even at this distance it seems likely that she would have gotten to the jury against the Clays, who, to be sure, have used her badly. It seems a pity she chose not to sue them. On the other hand, had she herself been a little more diligent in the administration of her affairs the venture might have borne fruit.

> *Judgments affirmed.*
> *Costs to be paid by the appellant.*